United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUIS RASHAWN DOUGLAS,<br><br>    Petitioner,<br><br>    v.<br><br>VINAL SINGH,<br><br>    Respondent.<br>_____/ | No. C-11-5370 EMC<br><br>**ORDER DENYING RESPONDENT'S MOTION TO STAY; AND DENYING PETITIONER'S CROSS-MOTION FOR RELEASE PENDING APPEAL**<br><br>**(Docket Nos. 20, 25)** |

        Previously, the Court granted Petitioner Marquis Rashawn Douglas's petition for habeas relief. *See* Docket No. 18 (order). In the same order, the Court vacated Mr. Douglas's convictions on three counts (second-degree murder, shooting into an inhabited house, and discharge, and discharge of a firearm in a grossly negligent manner resulting in death) and instructed the State to resentence Mr. Douglas in light of the vacated convictions unless the State reinstated criminal proceedings against him within sixty days. *See* Docket No. 18 (Order at 16). Currently pending before the Court is the State's motion to stay the order pending resolution of its appeal of the order to the Ninth Circuit. The State has made clear in its reply brief that it asks the Court (1) to stay the order that it retry Mr. Douglas within the sixty-day period *and* (2) to stay the order that effectively would release Mr. Douglas from custody (as Mr. Douglas has "no further time to serve on any offenses other than the second degree murder charge," a conviction for which the Court granted habeas relief). Opp'n at 2.

Having considered the parties' briefs, the Court hereby **DENIES** the State's request for relief. To the extent Mr. Douglas has filed a cross-motion seeking immediate release pending appeal, the motion is also **DENIED** but without prejudice.

## I. DISCUSSION

A. Legal Standard

The parties agree that, in light of the Court's order granting habeas relief, there is a presumption in favor of release from custody, but that presumption may be overcome if the traditional stay factors "tip the balance against it." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). The traditional stay factors are as follows:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 776. The question of whether to stay the decision granting habeas corpus and whether to release the prisoner pending appeal are treated as mirror images of each other. *See Franklin v. Duncan*, 891 F. Supp. 516, 518-19 (N. D. Cal. 1995).

The Supreme Court has instructed that, in evaluating whether to release a habeas petitioner, a court may consider the possibility of flight by the petitioner and whether there is a risk that the petitioner will pose a danger to the public if released. *See Braunskill*, 481 U.S. at 777.

> The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.

*Id.*

How the factors ultimately play out "may depend to a large extent upon determination of the State's prospects of success in its appeal." *Id.* at 778. For example, if the State can establish "a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Id.* But "[w]here the State's showing on the merits falls below this level, the preference for release should control." *Id.* In this case, the Court

finds that the State has shown neither a strong showing that it is likely to succeed on the merits or a substantial case on the merits of its anticipated appeal.

B.       Likelihood of Success on the Merits

The State argues that there is a likelihood that it will prevail on the merits on appeal because this Court misunderstood AEDPA's unreasonableness standard. But the fact that the Court did not specifically cite *Harrington v. Richter*, 131 S. Ct. 770 (2011), does not mean that the Court did not properly understand what unreasonableness means for purposes of AEDPA.

In its order, the Court noted that, under Supreme Court precedent, "a decision challenged as an unreasonable application of Supreme Court law must not merely be erroneous but [rather must be] 'objectively unreasonable.'" Docket No. 18 (Order at 8) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). *Lockyer* is still good precedent; indeed, in a case that post-dates *Richter*, the Supreme Court made use of *Lockyer*'s "objectively unreasonable" language. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 n.12 (2011) (stating that, "[e]ven taking the approach most favorable to Pinholster, and reviewing only whether the California Supreme Court was objectively unreasonable in the second state habeas proceeding, we find that Pinholster has failed to satisfy § 2254(d)(1)").

Moreover, in *Richter*, what the Supreme Court took issue with was a specific approach adopted by the Ninth Circuit. The Supreme Court explained that, in evaluating the habeas petition, the Ninth Circuit simply conducted a de novo review and then stated, "*without further explanation*, that the 'state court's decision to the contrary constituted an unreasonable application of *Strickland* [*i.e.*, the standard for ineffective assistance of counsel]." *Id.* at 786 (emphasis added).

> The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review: Because the Court of Appeals had little doubt that Richter's *Strickland* claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it. *This analysis overlooks arguments that would otherwise justify the state court's result* and ignores further limitations of [28 U.S.C.] § 2254(d), including its requirement that the state court's decision be evaluated according to the precedents of [the Supreme] Court."

3

*Id.* at 786 (emphasis added). If fairminded jurists could in fact disagree over the correctness of the state court's decision, then habeas relief would not be appropriate. *See id.*

Here, the Court did not ignore arguments that did – or even that could – justify the state court's decision.[1] For example:

- The state court suggested that the instructions were not ambiguous because part of the instructions specifically stated that Mr. Marquis "'aided and abetted either possession of a firearm by a minor or brandishing a firearm.'" Pet., Ex. A (Order at 24). But this Court found that conclusion objectively unreasonable (*i.e.*, fairminded jurists could *not* disagree) because that portion of the instructions was separated from the "numbered paragraphs" (where the ambiguity lay) by several paragraphs and it was not clear that that portion was even related to the first numbered paragraph. *See* Docket No. 18 (Order at 12).
- The state court indicated that there was no reasonable likelihood that the jury applied the instructions in a way that violates the Constitution because it did "not discern any objectionable misstatement of the law" by the prosecutor. Pet., Ex. A (Order at 25). But this was an objectively unreasonable conclusion (*i.e.*, fairminded jurists could *not* disagree) because there was clear evidence to the contrary in the record. As the Court noted in its order granting habeas relief, the prosecutor argued to the jury in closing that Mr. Douglas admitted to possession of a firearm by a minor. But Mr. Douglas only admitted to his own possession of a firearm; he never admitted to aiding and abetting his brother's possession. Thus, the prosecutor improperly "treated element (1) of Jury Instruction No. 402 as guilt based on direct possession rather than aiding and abetting Junor's possession." Docket No. 18 (Order at 13).
- The state court also indicated that there was no reasonable likelihood that the jury applied the instructions in a way that violates the Constitution because the trial court had instructed the

---

[1] The Court notes that *Richter* differs from the instant case in that, in *Richter*, the state court did not explain *why* it was denying the petitioner relief. The Supreme Court instructed that "a habeas court must determine what arguments or theories supported or, as here, *could* have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786 (emphasis added).

**United States District Court**
For the Northern District of California

jury that opening and closing arguments are not evidence. *See* Pet., Ex. A (Order at 26). This was an objectively unreasonable ruling (*i.e.*, fairminded jurists could *not* disagree) because, "even if the jury was [so] instructed . . . , that misses the point; the prosecution here made a misstatement of *law* (*i.e.*, guilt for murder [and so forth] could be predicated on Mr. Douglas's own possession of a gun, rather than Mr. Douglas's aiding and abetting of Junor's possession." Docket No. 18 (Order at 13). Moreover, the prosecutor's legal mistake could not simply be characterized as a stray comment or as a comment that was not central to the State's argument in favor of guilt, and defense counsel compounded the error by making the same mistake in his closing. *See* Docket No. 18 (Order at 14-15).

- Finally, this Court considered an additional argument that arguably could have justified the state court's decision (but that was not specifically recited in that decision) – *i.e.*, that there was no reasonable likelihood that the jury applied the instructions in a way that violates the Constitution because the jury was instructed that, if there was a conflict between the state court's instructions and an attorney's comments on the law, the jury was obligated to follow the state court's instructions. The Court rejected this potential justification (*i.e.*, fairminded jurists could *not* disagree) precisely because the instructions were ambiguous and therefore "a clear conflict was not apparent to the jury." Docket No. 18 (Order at 14). Furthermore, defense counsel had made the same legal mistake as the prosecutor.

- To the extent the State raises in its reply brief a new argument as to why the instructions were not ambiguous or why there was no reasonable likelihood that the jury applied the instructions in a way that violates the Constitution, *see* Reply at 2, the Court remains unconvinced. In the second numbered paragraph, the jury was instructed that one element for the prosecution to prove was: "During the commission of possession of a firearm by a minor, a co-participant in that possession of a firearm by a minor committed the crimes of murder, . . . shooting at an inhabited house and negligent discharge of a firearm." Because "co-participant" was defined as *either* the perpetrator *or* a person who aided and abetted the perpetrator, a reasonable jury could find – contrary to what the State argues – Mr. Douglas guilty of murder, shooting at an inhabited house, and negligent discharge of a firearm

because (1) Mr. Douglas admitted that he himself possessed a firearm by a minor and then (2) his brother committed the crimes of murder, shooting at an inhabited house, and negligent discharge because Mr. Douglas had brought the firearm to the scene of the incident.

The State contends that, even if there is no *Richter*-based problem, it still is likely to prevail on the merits on appeal because habeas relief is proper only where there is "'actual prejudice.'" Mot. at 4. But this Court specifically conducted a prejudice analysis in its order granting habeas relief, and the State has not shown that the prejudice test applied by the Court was incorrect. *Compare Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (stating that "actual prejudice" for purposes of habeas review means that the "error 'had substantial and injurious effect or influence in determining the jury's verdict'"), *with* Docket No. 18 (Order at 15) ("evaluat[ing] whether the trial court's instructional 'error had a "substantial and injurious effect or influence in determining the jury's verdict"'").

To the extent the State argues that whether Mr. Douglas "willingly supplied or resisted giving the gun [to his brother] . . . was not the focus of the trial," Mot. at 4, the fact remains that there was substantial conflicting evidence on this point. Since there was substantial evidence that Mr. Douglas did not aid and abet his brother's possession of a firearm by a minor, the instructional error permitted the jury erroneously to find Mr. Douglas guilty of, *e.g.*, murder based solely on his admission of his own possession of the firearm.

As for the State's point that there was also evidence to support the theory that Mr. Douglas willingly gave the gun to his brother, *see, e.g.*, Pet., Ex. A (Order at 4) (noting that "[o]ne witness . . . testified that [Mr. Douglas] assisted Junor in his effort to get the gun out of the coat, as they both 'were yelling to get something out'"), that is not dispositive; as noted above, the evidence on this point was in dispute as there was substantial testimony that Mr. Douglas resisted giving the gun to his brother. "Grave doubt" is enough to satisfy the prejudice prong, and "[g]rave doubt exists when the matter is so evenly balanced that [a court is] 'in virtual equipoise' as to the harmlessness of the error." *Estrella v. Ollison*, 668 F.3d 593, 598 (9th Cir. 2011).

1  In sum, even under the deferential standard of review under AEDPA, the State has not made
2 a sufficient showing on the merits to warrant a stay pending appeal.

3 C. <u>Injury to the State and/or Mr. Douglas and the Public Interest</u>

4  Even if the Court were to consider the other *Braunskill* factors, a stay is not warranted. The
5 injury to Mr. Douglas if the stay pending appeal were granted significantly outweighs the harm to
6 the State were the stay denied.

7  In its papers, the State claims that it would be injured, and that the public interest would
8 suffer, if (1) the Court were to deny a stay of the retrial requirement or (2) if the Court were to
9 effectively release Mr. Douglas from custody. As to the requirement that Mr. Douglas be retried
10 within sixty days, the State argues it would suffer injury in at least two ways. First, the State would
11 have limited time to locate witnesses and exhibits to prepare for a retrial – a difficulty compounded
12 by the fact that the underlying incident took place in January 2007 (*i.e.*, more than six years ago).
13 However, as noted below, the Court is granting an additional thirty days within which the State may
14 retry Mr. Douglas (giving it a total of ninety days). Furthermore, the State has not asked for
15 additional time to retry; instead it seeks to avoid retrial altogether by obtaining a stay pending
16 appeal. Second, as to the appeal, the State essentially argues that:

> [i]t is highly unlikely that the Ninth Circuit will hear the State's appeal and issue an opinion within the [60] days from [May 6, 2013,] that this Court set for retrial. It makes little sense for the State to be required to immediately conduct a murder trial if there is any possibility the trial could be mooted by a reversal of this Court's order on appeal.

20 *Franklin*, 891 F. Supp. at 520. However, this interest is diminished since this Court has found that
21 the State has not established a likelihood of success on appeal.

22  In contrast, if the stay were granted, Mr. Douglas could be incarcerated during the entire
23 pendency of the appeal even though he has already completed service of the determinate sentence
24 for the convictions other than the murder conviction;[2] he would remain incarcerated solely on the
25 indeterminate sentence for the murder conviction which this Court has found unconstitutional. *See*

---

[2] Even though the convictions for shooting at an inhabited house and negligent discharge are impugned by the Court's grant of the habeas petition, Mr. Douglas has served time for these convictions; the State does not contest that Mr. Douglas has already completed service of the determinate sentence for these two convictions.

7

*id.* (noting that petitioner had been imprisoned for four years under an unconstitutional conviction and that, although the Ninth Circuit could possibly reverse on appeal, "[t]he State has not sought an expedited appeal, and a long delay in the appellate process would weigh in favor of release").

While the State may have some interest in continuing custody and rehabilitation, especially as the remaining portion of Mr. Douglas's sentence is long, *see Braunskill*, 481 U.S. at 777, that interest is attenuated in light of the Court's conclusion that the murder conviction is unconstitutional and the State is not likely succeed on the merits of the appeal. *See id.* at 778.

Finally, the Court notes that under Federal Rule of Appellate Procedure 23(c), once the writ of habeas corpus is granted, there is a presumption that a petitioner is entitled to be released, *Braunskill*, 481 U.S. at 777, particularly since conditions such as a surety bond can be imposed.[3] Other than the convictions for the offenses herein, the State has not made any particular showing of flight risk or danger to community were the stay denied and Mr. Douglas released because of the State's failure to retry him. In contrast, Mr. Douglas asserts out that he had no prior convictions or juvenile adjudications on his record at the time of his arrest (a point which the government has not contested), *see* Opp'n at 8 (citing probation officer's report at CT 691), and expressed remorse. *See* Opp'n at 8 (citing CT 725-26 and RT 6545-47). The State has not disputed these assertions.

D.  Summary

Taking into account the *Braunskill* factors, the Court concludes that resolution of the dispute turns "to a large extent [on the Court's] determination of the State's prospects of success in its appeal." *Braunskill*, 481 U.S. at 778. Because the State has not established even a substantial case on the merits, "the preference for release should control" here. *Id.* Nor do the other *Braunskill* factors warrant a stay. The Court therefore denies the State's request for relief to the extent it asks for a stay of the order that would effectively release Mr. Douglas from custody. However, to the extent Mr. Douglas seeks immediate release from custody pending appeal, that request for relief is

---

[3] Given the grant of habeas herein, it is more appropriate to view Mr. Douglas "analogously to a pretrial detainee charged with murder." *Franklin*, 891 F. Supp. at 521. The State cites *Roe v. United States District Court*, 257 F.3d 1077 (9th Cir. 2001), in its reply brief, but in *Roe* the issue was whether the petitioner should have been admitted to bail pending resolution of his habeas claim. Here, the Court has actually resolved Mr. Douglas's habeas claim, though it is now, of course, subject to an appeal.

denied without prejudice as moot. The Court shall maintain its prior order (with one limited exception discussed below) requiring the State either (1) to retry Mr. Douglas on the vacated convictions within the specified time frame or (2) to have him resentenced, taking into account the convictions vacated pursuant to this Court's order granting habeas relief.

As for the State's request for a stay of the retrial requirement, that request for relief is also denied, in light of, *inter alia*, the State's failure to establish a likelihood of success of appeal. The Court, however, shall extend the time for the State to retry Mr. Douglas by another month – *i.e.*, until August 5, 2013. This will give the State additional time to locate the necessary witnesses and other evidence. This will also give the State time to seek an appeal of *this* order denying its request for a stay, if it so desires. The Court notes that, should the State appeal this order, and should the State successfully argue that it should obtain a stay with respect to the retrial requirement, Mr. Douglas should be free to renew his motion to be released from custody pending appeal, given the presumption under Rule 23(c) discussed above. *See Franklin*, 891 F. Supp. at 522 (granting the state relief from the requirement to retry the petitioner during the pendency of the appeal but still ordering his release from custody upon the posting of a bond and upon conditions of release to be set by the court).

## II. CONCLUSION

Accordingly, the Court denies the State's motion to stay in its entirety. Mr. Douglas's cross-motion is also denied (without prejudice) to the extent he seeks release from custody pending appeal.

This order disposes of Docket No. 20.

IT IS SO ORDERED.

Dated: June 12, 2013

_____
EDWARD M. CHEN
United States District Judge