1

2

3

4

5                              UNITED STATES DISTRICT COURT

6                              NORTHERN DISTRICT OF CALIFORNIA

7

8    MARQUIS RASHAWN DOUGLAS,                        No. C-11-5370 EMC

9              Petitioner,

10        v.                                         **ORDER DENYING RESPONDENT'S**
                                                     **MOTION TO STAY; AND DENYING**
11   VINAL SINGH,                                    **PETITIONER'S CROSS-MOTION FOR**
                                                     **RELEASE PENDING APPEAL**
12             Respondent.
                                                     **(Docket Nos. 20, 25)**
13   _____/

14

15

16        Previously, the Court granted Petitioner Marquis Rashawn Douglas's petition for habeas

17   relief.  *See* Docket No. 18 (order).  In the same order, the Court vacated Mr. Douglas's convictions

18   on three counts (second-degree murder, shooting into an inhabited house, and discharge, and

19   discharge of a firearm in a grossly negligent manner resulting in death) and instructed the State to

20   resentence Mr. Douglas in light of the vacated convictions unless the State reinstated criminal

21   proceedings against him within sixty days.  *See* Docket No. 18 (Order at 16).  Currently pending

22   before the Court is the State's motion to stay the order pending resolution of its appeal of the order

23   to the Ninth Circuit.  The State has made clear in its reply brief that it asks the Court (1) to stay the

24   order that it retry Mr. Douglas within the sixty-day period *and* (2) to stay the order that effectively

25   would release Mr. Douglas from custody (as Mr. Douglas has "no further time to serve on any

26   offenses other than the second degree murder charge," a conviction for which the Court granted

27   habeas relief).  Opp'n at 2.

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Having considered the parties' briefs, the Court hereby **DENIES** the State's request for relief. To the extent Mr. Douglas has filed a cross-motion seeking immediate release pending appeal, the motion is also **DENIED** but without prejudice.

## I.   DISCUSSION

A.   Legal Standard

The parties agree that, in light of the Court's order granting habeas relief, there is a presumption in favor of release from custody, but that presumption may be overcome if the traditional stay factors "tip the balance against it." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). The traditional stay factors are as follows:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 776. The question of whether to stay the decision granting habeas corpus and whether to release the prisoner pending appeal are treated as mirror images of each other. *See Franklin v. Duncan*, 891 F. Supp. 516, 518-19 (N. D. Cal. 1995).

The Supreme Court has instructed that, in evaluating whether to release a habeas petitioner, a court may consider the possibility of flight by the petitioner and whether there is a risk that the petitioner will pose a danger to the public if released. *See Braunskill*, 481 U.S. at 777.

> The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.

*Id.*

How the factors ultimately play out "may depend to a large extent upon determination of the State's prospects of success in its appeal." *Id.* at 778. For example, if the State can establish "a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Id.* But "[w]here the State's showing on the merits falls below this level, the preference for release should control." *Id.* In this case, the Court

1    finds that the State has shown neither a strong showing that it is likely to succeed on the merits or a

2    substantial case on the merits of its anticipated appeal.

3    B.    <u>Likelihood of Success on the Merits</u>

4        The State argues that there is a likelihood that it will prevail on the merits on appeal because

5    this Court misunderstood AEDPA's unreasonableness standard.  But the fact that the Court did not

6    specifically cite *Harrington v. Richter*, 131 S. Ct. 770 (2011), does not mean that the Court did not

7    properly understand what unreasonableness means for purposes of AEDPA.

8        In its order, the Court noted that, under Supreme Court precedent, "a decision challenged as

9    an unreasonable application of Supreme Court law must not merely be erroneous but [rather must

10    be] 'objectively unreasonable.'"  Docket No. 18 (Order at 8) (quoting *Lockyer v. Andrade*, 538 U.S.

11    63, 75 (2003)).  *Lockyer* is still good precedent; indeed, in a case that post-dates *Richter*, the

12    Supreme Court made use of *Lockyer*'s "objectively unreasonable" language.  *See Cullen v.*

13    *Pinholster*, 131 S. Ct. 1388, 1403 n.12 (2011) (stating that, "[e]ven taking the approach most

14    favorable to Pinholster, and reviewing only whether the California Supreme Court was objectively

15    unreasonable in the second state habeas proceeding, we find that Pinholster has failed to satisfy §

16    2254(d)(1)").

17        Moreover, in *Richter*, what the Supreme Court took issue with was a specific approach

18    adopted by the Ninth Circuit.  The Supreme Court explained that, in evaluating the habeas petition,

19    the Ninth Circuit simply conducted a de novo review and then stated, "*without further explanation*,

20    that the 'state court's decision to the contrary constituted an unreasonable application of *Strickland*

21    [*i.e.*, the standard for ineffective assistance of counsel]."  *Id.* at 786 (emphasis added).

22            The Court of Appeals appears to have treated the
unreasonableness question as a test of its confidence in the result it

23            would reach under *de novo* review: Because the Court of Appeals had
little doubt that Richter's *Strickland* claim had merit, the Court of

24            Appeals concluded the state court must have been unreasonable in
rejecting it.  *This analysis overlooks arguments that would otherwise*

25            *justify the state court's result* and ignores further limitations of [28
U.S.C.] § 2254(d), including its requirement that the state court's

26            decision be evaluated according to the precedents of [the Supreme]
Court."

27

28

United States District Court

For the Northern District of California

1    *Id.* at 786 (emphasis added).  If fairminded jurists could in fact disagree over the correctness of the

2    state court's decision, then habeas relief would not be appropriate.  *See id.*

3       Here, the Court did not ignore arguments that did – or even that could – justify the state

4    court's decision.[1]  For example:

5    •    The state court suggested that the instructions were not ambiguous because part of the

6      instructions specifically stated that Mr. Marquis "'aided and abetted either possession of a

7      firearm by a minor or brandishing a firearm.'"  Pet., Ex. A (Order at 24).  But this Court

8      found that conclusion objectively unreasonable (*i.e.*, fairminded jurists could *not* disagree)

9      because that portion of the instructions was separated from the "numbered paragraphs"

10     (where the ambiguity lay) by several paragraphs and it was not clear that that portion was

11     even related to the first numbered paragraph.  *See* Docket No. 18 (Order at 12).

12   •    The state court indicated that there was no reasonable likelihood that the jury applied the

13     instructions in a way that violates the Constitution because it did "not discern any

14     objectionable misstatement of the law" by the prosecutor.  Pet., Ex. A (Order at 25).  But this

15     was an objectively unreasonable conclusion (*i.e.*, fairminded jurists could *not* disagree)

16     because there was clear evidence to the contrary in the record.  As the Court noted in its

17     order granting habeas relief, the prosecutor argued to the jury in closing that Mr. Douglas

18     admitted to possession of a firearm by a minor.  But Mr. Douglas only admitted to his own

19     possession of a firearm; he never admitted to aiding and abetting his brother's possession.

20     Thus, the prosecutor improperly "treated element (1) of Jury Instruction No. 402 as guilt

21     based on direct possession rather than aiding and abetting Junor's possession."  Docket No.

22     18 (Order at 13).

23   •    The state court also indicated that there was no reasonable likelihood that the jury applied the

24     instructions in a way that violates the Constitution because the trial court had instructed the

25

26      [1] The Court notes that *Richter* differs from the instant case in that, in *Richter*, the state court did not explain *why* it was denying the petitioner relief.  The Supreme Court instructed that "a

27   habeas court must determine what arguments or theories supported or, as here, *could* have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could

28   disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  *Richter*, 131 S. Ct. at 786 (emphasis added).

United States District Court

For the Northern District of California

jury that opening and closing arguments are not evidence.  *See* Pet., Ex. A (Order at 26).
This was an objectively unreasonable ruling (*i.e.*, fairminded jurists could *not* disagree)
because, "even if the jury was [so] instructed . . . , that misses the point; the prosecution here
made a misstatement of *law* (*i.e.*, guilt for murder [and so forth] could be predicated on Mr.
Douglas's own possession of a gun, rather than Mr. Douglas's aiding and abetting of Junor's
possession." Docket No. 18 (Order at 13).  Moreover, the prosecutor's legal mistake could
not simply be characterized as a stray comment or as a comment that was not central to the
State's argument in favor of guilt, and defense counsel compounded the error by making the
same mistake in his closing.  *See* Docket No. 18 (Order at 14-15).

- Finally, this Court considered an additional argument that arguably could have justified the
state court's decision (but that was not specifically recited in that decision) – *i.e.*, that there
was no reasonable likelihood that the jury applied the instructions in a way that violates the
Constitution because the jury was instructed that, if there was a conflict between the state
court's instructions and an attorney's comments on the law, the jury was obligated to follow
the state court's instructions.  The Court rejected this potential justification (*i.e.*, fairminded
jurists could *not* disagree) precisely because the instructions were ambiguous and therefore
"a clear conflict was not apparent to the jury." Docket No. 18 (Order at 14).  Furthermore,
defense counsel had made the same legal mistake as the prosecutor.

- To the extent the State raises in its reply brief a new argument as to why the instructions
were not ambiguous or why there was no reasonable likelihood that the jury applied the
instructions in a way that violates the Constitution, *see* Reply at 2, the Court remains
unconvinced.  In the second numbered paragraph, the jury was instructed that one element
for the prosecution to prove was: "During the commission of possession of a firearm by a
minor, a co-participant in that possession of a firearm by a minor committed the crimes of
murder, . . . shooting at an inhabited house and negligent discharge of a firearm."  Because
"co-participant" was defined as *either* the perpetrator *or* a person who aided and abetted the
perpetrator, a reasonable jury could find – contrary to what the State argues – Mr. Douglas
guilty of murder, shooting at an inhabited house, and negligent discharge of a firearm

United States District Court
For the Northern District of California

because (1) Mr. Douglas admitted that he himself possessed a firearm by a minor and then (2) his brother committed the crimes of murder, shooting at an inhabited house, and negligent discharge because Mr. Douglas had brought the firearm to the scene of the incident.

The State contends that, even if there is no *Richter*-based problem, it still is likely to prevail on the merits on appeal because habeas relief is proper only where there is "'actual prejudice.'" Mot. at 4.  But this Court specifically conducted a prejudice analysis in its order granting habeas relief, and the State has not shown that the prejudice test applied by the Court was incorrect. *Compare Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (stating that "actual prejudice" for purposes of habeas review means that the "error 'had substantial and injurious effect or influence in determining the jury's verdict'"), *with* Docket No. 18 (Order at 15) ("evaluat[ing] whether the trial court's instructional 'error had a "substantial and injurious effect or influence in determining the jury's verdict"'").

To the extent the State argues that whether Mr. Douglas "willingly supplied or resisted giving the gun [to his brother] . . . was not the focus of the trial," Mot. at 4, the fact remains that there was substantial conflicting evidence on this point.  Since there was substantial evidence that Mr. Douglas did not aid and abet his brother's possession of a firearm by a minor, the instructional error permitted the jury erroneously to find Mr. Douglas guilty of, *e.g.*, murder based solely on his admission of his own possession of the firearm.

As for the State's point that there was also evidence to support the theory that Mr. Douglas willingly gave the gun to his brother, *see, e.g.*, Pet., Ex. A (Order at 4) (noting that "[o]ne witness . . . testified that [Mr. Douglas] assisted Junor in his effort to get the gun out of the coat, as they both 'were yelling to get something out'"), that is not dispositive; as noted above, the evidence on this point was in dispute as there was substantial testimony that Mr. Douglas resisted giving the gun to his brother.  "Grave doubt" is enough to satisfy the prejudice prong, and "[g]rave doubt exists when the matter is so evenly balanced that [a court is] 'in virtual equipoise' as to the harmlessness of the error." *Estrella v. Ollison*, 668 F.3d 593, 598 (9th Cir. 2011).

United States District Court

For the Northern District of California

1    In sum, even under the deferential standard of review under AEDPA, the State has not made

2    a sufficient showing on the merits to warrant a stay pending appeal.

3    C.    Injury to the State and/or Mr. Douglas and the Public Interest

4    Even if the Court were to consider the other *Braunskill* factors, a stay is not warranted.  The

5    injury to Mr. Douglas if the stay pending appeal were granted significantly outweighs the harm to

6    the State were the stay denied.

7    In its papers, the State claims that it would be injured, and that the public interest would

8    suffer, if (1) the Court were to deny a stay of the retrial requirement or (2) if the Court were to

9    effectively release Mr. Douglas from custody.  As to the requirement that Mr. Douglas be retried

10   within sixty days, the State argues it would suffer injury in at least two ways.  First, the State would

11   have limited time to locate witnesses and exhibits to prepare for a retrial – a difficulty compounded

12   by the fact that the underlying incident took place in January 2007 (*i.e.*, more than six years ago).

13   However, as noted below, the Court is granting an additional thirty days within which the State may

14   retry Mr. Douglas (giving it a total of ninety days).  Furthermore, the State has not asked for

15   additional time to retry; instead it seeks to avoid retrial altogether by obtaining a stay pending

16   appeal.  Second, as to the appeal, the State essentially argues that:

17          [i]t is highly unlikely that the Ninth Circuit will hear the State's appeal
            and issue an opinion within the [60] days from [May 6, 2013,] that this
18          Court set for retrial.  It makes little sense for the State to be required to
            immediately conduct a murder trial if there is any possibility the trial
19          could be mooted by a reversal of this Court's order on appeal.

20   *Franklin*, 891 F. Supp. at 520.  However, this interest is diminished since this Court has found that

21   the State has not established a likelihood of success on appeal.

22   In contrast, if the stay were granted, Mr. Douglas could be incarcerated during the entire

23   pendency of the appeal even though he has already completed service of the determinate sentence

24   for the convictions other than the murder conviction;[2] he would remain incarcerated solely on the

25   indeterminate sentence for the murder conviction which this Court has found unconstitutional.  *See*

26   _____

27          [2] Even though the convictions for shooting at an inhabited house and negligent discharge are
     impugned by the Court's grant of the habeas petition, Mr. Douglas has served time for these
28   convictions; the State does not contest that Mr. Douglas has already completed service of the
     determinate sentence for these two convictions.

United States District Court

For the Northern District of California

1    *id.* (noting that petitioner had been imprisoned for four years under an unconstitutional conviction

2    and that, although the Ninth Circuit could possibly reverse on appeal, "[t]he State has not sought an

3    expedited appeal, and a long delay in the appellate process would weigh in favor of release").

4            While the State may have some interest in continuing custody and rehabilitation, especially

5    as the remaining portion of Mr. Douglas's sentence is long, *see Braunskill*, 481 U.S. at 777, that

6    interest is attenuated in light of the Court's conclusion that the murder conviction is unconstitutional

7    and the State is not likely succeed on the merits of the appeal.  *See id.* at 778.

8            Finally, the Court notes that under Federal Rule of Appellate Procedure 23(c), once the writ

9    of habeas corpus is granted, there is a presumption that a petitioner is entitled to be released,

10   *Braunskill*, 481 U.S. at 777, particularly since conditions such as a surety bond can be imposed.[3]

11   Other than the convictions for the offenses herein, the State has not made any particular showing of

12   flight risk or danger to community were the stay denied and Mr. Douglas released because of the

13   State's failure to retry him.  In contrast, Mr. Douglas asserts out that he had no prior convictions or

14   juvenile adjudications on his record at the time of his arrest (a point which the government has not

15   contested), *see* Opp'n at 8 (citing probation officer's report at CT 691), and expressed remorse.  *See*

16   Opp'n at 8 (citing CT 725-26 and RT 6545-47).  The State has not disputed these assertions.

17   D.      Summary

18           Taking into account the *Braunskill* factors, the Court concludes that resolution of the dispute

19   turns "to a large extent [on the Court's] determination of the State's prospects of success in its

20   appeal."  *Braunskill*, 481 U.S. at 778.  Because the State has not established even a substantial case

21   on the merits, "the preference for release should control" here.  *Id.*  Nor do the other *Braunskill*

22   factors warrant a stay.  The Court therefore denies the State's request for relief to the extent it asks

23   for a stay of the order that would effectively release Mr. Douglas from custody.  However, to the

24   extent Mr. Douglas seeks immediate release from custody pending appeal, that request for relief is

25

26           [3] Given the grant of habeas herein, it is more appropriate to view Mr. Douglas "analogously
     to a pretrial detainee charged with murder."  *Franklin*, 891 F. Supp. at 521.  The State cites *Roe v.*
27   *United States District Court*, 257 F.3d 1077 (9th Cir. 2001), in its reply brief, but in *Roe* the issue
     was whether the petitioner should have been admitted to bail pending resolution of his habeas claim.
28   Here, the Court has actually resolved Mr. Douglas's habeas claim, though it is now, of course,
     subject to an appeal.

**United States District Court**
For the Northern District of California

1 denied without prejudice as moot.  The Court shall maintain its prior order (with one limited

2 exception discussed below) requiring the State either (1) to retry Mr. Douglas on the vacated

3 convictions within the specified time frame or (2) to have him resentenced, taking into account the

4 convictions vacated pursuant to this Court's order granting habeas relief.

5       As for the State's request for a stay of the retrial requirement, that request for relief is also

6 denied, in light of, *inter alia*, the State's failure to establish a likelihood of success of appeal.  The

7 Court, however, shall extend the time for the State to retry Mr. Douglas by another month – *i.e.*,

8 until August 5, 2013.  This will give the State additional time to locate the necessary witnesses and

9 other evidence.  This will also give the State time to seek an appeal of *this* order denying its request

10 for a stay, if it so desires.  The Court notes that, should the State appeal this order, and should the

11 State successfully argue that it should obtain a stay with respect to the retrial requirement, Mr.

12 Douglas should be free to renew his motion to be released from custody pending appeal, given the

13 presumption under Rule 23(c) discussed above.  *See Franklin*, 891 F. Supp. at 522 (granting the

14 state relief from the requirement to retry the petitioner during the pendency of the appeal but still

15 ordering his release from custody upon the posting of a bond and upon conditions of release to be set

16 by the court).

17                  **II.**   **CONCLUSION**

18       Accordingly, the Court denies the State's motion to stay in its entirety.  Mr. Douglas's cross-

19 motion is also denied (without prejudice) to the extent he seeks release from custody pending

20 appeal.

21       This order disposes of Docket No. 20.

22

23       IT IS SO ORDERED.

24

25 Dated: June 12, 2013

26

27                               EDWARD M. CHEN
                              United States District Judge

28